JOHN WRIGHT, plaintiff in error, *v.* JOHN TAYLOR, defendant in error.

*Error to Menard.*

A. gave to B. his promissory note for $672·08, payable in two years, and nego-tiable in the State Bank of Illinois, and secured the same by a mortgage of real estate.   The note was assigned to said Bank by the payee, and its paper having depreciated, B. without the assent or concurrence of A. when said note became due, paid the said note in such depreciated paper.   B. then brought his bill in Chancery to foreclose the mortgage, and the Circuit Court rendered a decree in his favor for the amount of the note and inter-est, and that the mortgaged premises be sold, &c:   *Held,* that B. only succeeded to the rights of the Bank, and could not, by his voluntary act, have any better right or superior equity; that A. was entitled to discharge his indebtedness in the paper of the Bank, and that B. could only recover the value of the funds at the time he paid the note.

BILL IN CHANCERY to foreclose a mortgage, &c., brought by the defendant in error against the plaintiff in error in the Menard Circuit Court, and heard before the Hon. Samuel H. Treat, when a decree of foreclosure, &c., was rendered.

The facts appear in the Opinion of the Court.

*A. T. Bledsoe,* for the plaintiff in error.

*A. Lincoln,* for the defendant in error.

The Opinion of the Court was delivered by

PURPLE, J.*   On the 18th day of October, 1843, Taylor, the defendant in error, filed his bill in Chancery in the Court

---

* DENNING, J. did not sit in this case.

below, to foreclose a mortgage executed by Wright, the plaintiff in error.

The bill describes the mortgage as having been executed on the 6th of March, A. D. 1841, and alleges that it was given to secure the payment of three notes, each for the sum of $672·08, due severally at one, two and three years; that the first note had been paid, and the second is due and unpaid, and concludes with a prayer for a decree, that the defendant below pay said note and interest, and in default thereof, that the mortgaged premises be sold, &c.

The following is a copy of said note: "Two years after date, I promise to pay John Taylor or order, six hundred and seventy two dollars and eight cents, value received, payable and negotiable in the State Bank of Illinois.

March 6th, 1841.

(Signed) John Wright."

Wright filed his answer, admitting the execution of the note and mortgage, and that he had not paid the note. But he charges that Taylor assigned the note to the State Bank of Illinois, in payment of a debt due by him to the Bank; and that being so assigned, and the property of the Bank, he (Wright) had by law, and the charter of the Bank, the right and privilege of paying the same in the paper of the Bank. He further charges, that after the assignment, the paper of the Bank depreciated, so that it was worth only about twenty six cents to the dollar, and that upon such depreciation, the note having become due and unpaid, Taylor, without any authority from him, paid the note to the Bank in such depreciated paper, and that the Bank delivered the note back to Taylor, who seeks to collect the same in money.

The cause was heard upon the bill, answer and exhibits, and a decree rendered in favor of the complainant in the Circuit Court for the amount of the note and interest, and that the mortgaged premises be sold, &c. The plaintiff here seeks to reverse this decree, and contends that in equity he is only bound to pay the specie value of the Bank paper at the time it was advanced by Taylor, and interest thereon from the date of the advancement.

The case, I think, is plain and easy of solution. The general doctrine of the law relative to the transfer, and indorsement of promissory notes, has necessarily but little application to the question, and the controversy may be settled equitably and legally without the slightest interference with any known or established principle.

What are the facts? The Bank was the holder and legal owner of this note. It was over due. The maker had an unquestionable right in law to pay it in the paper of the Bank. If the Bank had assigned it to a stranger, its assignee could only have succeeded to its rights, subject to every equity existing between it and the maker. The payee and assignor can have no better rights nor superior equity by voluntarily taking up the note. His liability depended upon the failure of the Bank to collect the amount due upon the note, by due course of law against the maker. In no event could he be compelled to pay in any funds except the paper of the Bank. This had depreciated, and as the answer states, which, for the purposes of this decision must be taken to be true, was worth but twenty six cents to the dollar. I cannot understand how Taylor, under the circumstances, could have any legal or equitable right, especially before he was liable to a suit as indorser of the note, to purchase it of the Bank and charge Wright more than he had paid for it himself. It is clear that no other person could have done so. Having been once the absolute property of the Bank, and over due, the maker's right to discharge it in Bank indebtedness accompanied it into whose hands soever it might afterwards fall, as fully and to all intents and purposes, as it would have done if it had been so stipulated upon the note itself. If any doubt had previously existed upon this question, it was put at rest by the Act of the General Assembly of this State, approved December 22, 1842, (Laws 1842-3, page 21,) by which it is provided: "That all debts and demands due by note or otherwise, unto the President, Directors and Company of the Bank of Illinois, or to the State Bank of Illinois, or that may hereafter become due unto either of said Banks, may, after or before suit brought thereon, be dis-

charged and paid in notes and bills of said Banks respectively to which said debt or demand may be due, whether the same be in possession of said Bank or Banks, or assigned or transferred to any corporation, person or persons."

The precise time when the note was paid by Taylor to the Bank does not appear. It is shown in the answer, that it was not done until after the same fell due, which was on the sixth of March, A. D. 1843. This was subsequent to the passage of the law before referred to, and also to the Act of the 24th January, 1843, (Laws of 1842-3, page 21,) putting the Bank in liquidation. In order to do ample justice to the complainant in the Court below, I shall assume that he paid the note on the seventh of March, 1843, the day after its maturity.

According to the answer, the value of the funds in which the same was paid or purchased would be $174·74; which sum, with interest thereon at the rate of six per cent. per annum from the date last aforesaid until the money shall be paid, Taylor is entitled to recover.

The decree of the Circuit Court is, therefore, in part reversed; but inasmuch as it is competent for this Court to render the proper decree in the premises, it is ordered, adjudged and decreed, that the defendant in the Court below pay to the complainant in said Court, the sum of one hundred and seventy four dollars and seventy four cents, with interest thereon at the rate of six per cent. per annum from the seventh day of March, A. D. 1843, to the time such payment shall be made, within twenty days from the date of this decree; and that the same shall be in full satisfaction and discharge of the note referred to in and exhibited with said complainant's bill; and that in default of such payment, that the mortgaged premises described in said bill be sold, and said mortgage be foreclosed in the manner directed and required by the decree of the Circuit Court herein, and that the commissioner appointed by said decree do make said sale and execute to the purchaser or purchasers of said mortgaged premises a certificate, or certificates of purchase, pursuant to the directions of said decree; and that, for the

purposes aforesaid, so much of the said decree shall stand affirmed and be in force. And it is further decreed, that the defendant in error recover his costs in the Court below, and the plaintiff in error his costs in this Court, and that executions from said Courts issue respectively therefor; and that this cause be remanded for further proceedings not inconsistent with this decree.*

*Decree reversed.*

* WILSON, C. J. and LOCKWOOD, J. dissented.